UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN A. AMESBURY, Executrix of the ESTATE OF BRIAN MARK PATTON, Deceased, and AMY BETH PATTON, his wife, and DAVID MORGAN,<br><br>Plaintiffs.<br>v.<br><br>CSA, LTD. (CSA), COMBAT SUPPORT ASSOCIATES, AECOM GOVERNMENT SERVICES, INC. (AECOM), RESEARCH AND ANALYSIS MAINTENANCE, INC., (RAM), SMI INTERNATIONAL CORP. (SMI), MORGAN LEE HANKS, ALEUT MANAGEMENT SERVICES, LLC,<br><br>Defendants. | NO. 3:10-CV-1712<br><br>Judge Kosik |

## **MEMORANDUM OF LAW**

On February 7, 2013, we issued a Memo to Counsel (Doc. 178), wherein we ruled on several outstanding motions in this case. In the Memo to Counsel, we indicated that where necessary, we would issue a Memorandum of Law detailing our reasons for the rulings on the motions. This Memorandum of Law addresses some of those motions.

We have before us a defense motion to reconsider a previously filed motion to dismiss pursuant to Rule 12 (b)(1) of the Federal Rules of Civil Procedure based on the grounds that (1) the action is preempted by the "combatant activities" exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Section 2680(j), which excepts "Any claim arising out of the combatant activities of the military or naval forces… during time of war.", and (2) the suit is non-justiciable under the political question doctrine.

The motion to dismiss was first addressed and denied in a Memorandum and Order filed on February 21, 2012 (Doc. 86). At the time giving rise to this suit, which

occurred in Kuwait, we noted that this country was not at war and that Kuwait was not a war zone. Kuwait was classed as a combat zone by Executive Order only to allow Internal Revenue consideration with respect to income being paid to all personnel[1]. We noted that some evidence of the non-combatant nature of the convoy and parties is supported by the visit of the convoy to a Starbucks facility in the middle of the early morning start of the convoy[2]. We also noted that neither the military convoy, nor anyone associated with it, has been named a defendant. It was further apparent that, at the time, the named civilian contractors and individual defendants were not engaged in any military support function. It was further noted that at the stage we were considering the motions to dismiss, neither the convoy, nor anyone associated with it, was relevant to the collision underlying this action. Because discovery was not completed, we extended revisiting the issues in a summary judgment motion, if additional facts were developed.

Following the close of discovery, the instant motion (Doc. 148) was filed asking the Court to reconsider its previous decision. (*See* Doc. 86). In regards to the combatant activities exception to the FTCA, we will not revisit this issue, and we will stand by our previous rulings. As to the political question doctrine, we believe further explanation is warranted, even though we still stand by our previous ruling.

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230 (1986). In *Baker v. Carr*, 369 U.S. 186 (1962), the Supreme Court outlined a list of factors to be used when determining whether a claim raises a non-justiciable

---

[1] Executive Order 12744: designation for purposes of Section 112 of Internal Revenue Code.

[2] A military person said the convoy was non-tactical. Persons making up the convoy possessed weapons which had no ammunition.

political question. These factors are:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] a lack of judicially discoverable and manageable standards for resolving it; [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217.

In the motion for reconsideration, counsel references a recent decision filed by the United States District Court for the Western District of Pennsylvania, *Harris v. Kellogg, Brown & Root Services, Inc.*, 878 F. Supp. 2d 543 (W.D. Pa. 2012). In *Harris*, the Western District Court considered whether it had jurisdiction to hear a case brought by parents, on behalf of themselves and as administrators of a soldier's estate, alleging that the contractor's negligent performance or non-performance of electrical maintenance at an Iraqi military base caused the soldier's electrocution and death. *Id.* The Western District Court originally denied a motion to dismiss brought by the defendants in that case. The Third Circuit Court of Appeals, at 615 F.3d 398, dismissed an appeal by the defendants without addressing the merits and remanded the case back to the District Court. On remand, the parties were ordered to conduct discovery. The defendants again moved to dismiss and the District Court granted dismissal holding that the action was barred by the political question doctrine and preempted by the combatant activities exception to the FTCA. *Id.*

> After conducting a "discriminating inquiry into the precise facts" of this case as established through a lengthy period of discovery and having heard the parties' arguments outlining the claims and defenses that they intend to present at trial, the Court finds that further adjudication of this dispute will inextricably lead to consideration of sensitive military judgments for which no judicially manageable standards exist. Specifically, further adjudication of this case will require evaluation of the military's decision to continue to house soldiers in hardstand buildings with hazardous electrical systems even though the military was aware that the buildings lacked grounding and bonding and the military possessed specific knowledge that such electrical deficiencies had resulted in electrocutions to military personnel, causing injuries and even deaths, prior to the events of this case.

*Id.* at 547. (internal citations omitted).

The specific circumstances of *Harris* revolve around the death by electrocution of a soldier while showering due to negligent or non-existent electrical maintenance on an Iraqi base. *Id.* The District Court held that the action was barred by the political question doctrine finding that the military presence loomed large over nearly every aspect of the case. *Id.* at 570. "Specifically, the military exerted control over all aspects of the RPC, including: base security; base life activities; the designation of buildings as living quarters; assignments of soldiers to certain living quarters; the availability of alternative housing and showering facilities; and the terms and conditions of the engagement of government contractors, like KBR, to perform discrete support functions at the base." *Id.* As the Court pointed out,

> In evaluating whether a case presents a political question, a court must "undertake a 'discriminating inquiry into the precise facts and posture of the particular case.'" Further, the case must be evaluated as it would be tried, and both the claims and defenses must be examined to determine if a political question precludes review of the case.

*Id.* at 571. (internal citations omitted).

The District Court specifically held that the political question doctrine was to be applied in that particular case because there was a textually demonstrable commitment to coordinate political branches, there were no judicially discoverable and manageable standards, and a lack of respect for due coordinate branches.

> After conducting a "discriminating inquiry" into the detailed factual record in this case, the Court concludes that further consideration of this case would violate the doctrine of separation of powers between the co-equal branches of our federal government. From this Court's perspective, it would be impossible to evaluate this case without questioning sensitive military policy-based decisions over which no judicially manageable standards can be crafted, and requiring military personnel to appear at trial and defend these wartime policies would offend the constitutional principles we have discussed.

*Id.* at 593.

In another case referenced by counsel, *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271 (11th Cir. 2009), involving a military convoy, the wife of a service member, individually and as the service member's guardian, brought a suit

against military contractors alleging that their driver's negligence, in losing control of a truck, caused injuries suffered by the service member, who was providing military escort for the contractor's convoy in a combat zone. The United States District Court for the Northern District of Georgia, 564 F. Supp. 2d 1363, granted the defendants' motion to dismiss. The wife appealed to the Eleventh Circuit. In addition to other issues raised in the case, the Eleventh Circuit held that the political question doctrine barred the negligence claims against the contractors. After reviewing the claim, the Eleventh Circuit concluded,

> that adjudicating the plaintiff's claims would require extensive reexamination and second-guessing of many sensitive judgments surrounding the conduct of a military convoy in war time --including its timing, size, configurations, speed, and force protection. In addition, we can discern no judicially manageable standards for resolving the plaintiff's claims. Accordingly, we hold that the political question doctrine bars the plaintiff's suit, and we affirm the district court's dismissal for lack of subject-matter jurisdiction.

*Id.* at 1275.

The Eleventh Circuit noted that the accident which occurred in this case took place during a military operation in Iraq and that the vehicle involved in the accident was a part of the military convoy. As such, "military judgment governed the planning and execution of virtually every aspect of the convoy in which Sergeant Carmichael was injured." *Id.* at 1281. Moreover, the Eleventh Circuit stated that,

> Because the circumstances under which the accident took place were so thoroughly pervaded by military judgments and decisions, it would be impossible to make any determination regarding Irvine's or KBR's negligence without bringing those essential military judgments and decisions under searching judicial scrutiny. Yet it is precisely this kind of scrutiny that the political question doctrine forbids. The district court properly found that Carmichael's suit is non-justiciable.

*Id.* at 1282-83.

We find these cases to be distinguishable. In those cases where the political question doctrine barred the plaintiffs' claims, decisions made by the military had a direct impact and were intimately connected to the harm caused to plaintiffs. Unlike in those cases, in our case, the military convoy was incidental to the accident. Neither the parties, nor their vehicles, were a part of the convoy. There was no

military judgment involved in either parties' actions while driving that day. It was only by happenstance that the convoy was using the same road, at the same time, that the parties were involved in this accident. Further, while those cases had no judicially discoverable and manageable standards for resolving the issues, our case may be viewed as a motor vehicle accident in which we will be applying Pennsylvania law.

After conducting a discriminating inquiry into the precise facts of this case, we found that under the instant circumstances, plaintiffs' claims were not barred by the political question doctrine and we denied defendants' motion. Moreover, due to the distinguishing factors of this case, we found that an interlocutory appeal would not be warranted. Thus, the request for such an appeal was denied.

We note that in an attempt to support the present reconsideration motion, defendants offered expert opinions to fault the convoy itself, as well as the deceased victim, Brian Mark Patton, who was acting in his military capacity. Plaintiffs sought to exclude the defendant's expert testimony because in the report of one expert, he incorrectly based his opinion on the premise that Kuwait was a combat zone for the purpose of convoy operations and that the convoy was tactical in nature. The expert had no experience in convoy operations. A second expert calculates and offers his opinion that Hanks was passing the convoy traveling at less than 50 miles per hour, but could not get in between convoy vehicles going the same approximate speed. Yet, at the criminal trial of Hanks, a witness testified that Hanks was going "about 15 to 20 miles faster than the convoy speed." (Doc. 153, page 12). This was just before the accident while the convoy itself was going at 80 kilometers per hour (49.7 miles per hour). The exclusion of this expert testimony was the basis for several motions in limine.

While the above contradictions go to the weight of the experts' testimony, which can be developed on cross-examination, there were instances of erroneous application of the rules of the road. As we previously ruled, we will be applying

-6-

Pennsylvania law in this case.

At this point, we question whether the expert testimony satisfies Rule 702 of the Federal Rules of Evidence; will it "assist the trier of fact to understand the evidence or to determine a fact in issue...". Would the experts establish the liability of the convoy or Brian Mark Patton, neither of which is charged, on selective and at times conflicting evidence from witnesses to include the speed of Morgan Lee Hanks and other necessary elements essential to establishing liability. As an example, one expert accepts that the convoy was a tactical move in a combat zone, contrary to the evidence that it was not.

Rule 702 makes inadmissible expert testimony as to matters which are obviously within the common knowledge of jurors. In its application here, the defense experts would only cause confusion.[3] This would not preclude the parties from relying on witnesses to the events to show the accident was caused by persons, entities or circumstances other than Hanks, whether they be a party or not,

Edwin M. Kosik
United States District Judge

February 11, 2013

---

[3] We note that Plaintiffs have also submitted expert reports, which have been objected to by Defendants. For the same reasons discussed above, Defendants' Motion in Limine to Preclude the Testimony of James S. Sobek, P.E. (Doc. 136) was granted.